# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

**ODALIZ ZAMORA, ADAN ANTONIO, CUTBERTO ESCANDON, ANDRES LOPEZ, BENANCIO MATEO, GUADALUPE LOPEZ, MARICIO ARIOLA, aka Manuel Batist, KIMBERLY RUIZ, ARMANDO CARRILLO, ROSAILA DEL PORTE, MIGUEL PEREZ LOPEZ, SANTOS PEREZ LOPEZ, AGUSTINA DECUESTA, NETALI MATEO, SANTOS GARCIA,**

                **Plaintiffs,**

-vs-                                            Case No. 2:08-cv-539-FtM-29DNF

**EAST COAST RIGHT OF WAY MAINTENANCE, INC., a Florida forprofit corporation, ROBERT W. SMITH, MICHAEL DELUCA,**

                **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for consideration on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO ABATE LITIGATION AND COMPEL ARBITRATION (Doc. No. 4)** |
| **FILED:** | **July 11, 2008** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

The Defendants, East Coast Right of Way Maintenance, Inc., ("East Coast") Robert W. Smith, and Michael Deluca are requesting that the Court abate this litigation and compel arbitration. The Defendants contend that the claims alleged by the Plaintiffs regarding unpaid overtime wages are covered under the Arbitration Agreement signed by the Plaintiffs and ELS, Inc. a non-party to this action. The Plaintiffs contend that they did not enter into a contract containing an arbitration provision with the Defendants, not all of the Plaintiffs signed an Agreement with ELS, Inc., the Plaintiffs are unable to afford arbitration, and the claims do not fall within the arbitration agreement.

**I. Allegations in the Complaint**

The Plaintiffs contend that they were hourly employees of the Defendants. (Com[1]. §10-24). The Plaintiffs assert that they worked over forty (40) hours per week, and were not compensated by the Defendants for the overtime hours that they worked. (Com. ¶27- 28). The Plaintiffs allege that the Defendants failed to document the actual hours worked. (Com. ¶28). The Plaintiffs claim that the Defendants deducted 30 minutes each day for meal breaks, but the Plaintiffs were not fully relieved of their duties during this time, and the Defendants failed to compensate the Plaintiffs for travel time to work locations and for wait time. (Com. ¶28).

**II. Arbitration Clause**

The Defendants contend that some of the Plaintiffs signed an Alternative Dispute Resolution and Mutual Agreement to Arbitrate ("Agreement") and therefore, the claims raised in the Complaint should be referred to arbitration. Some of the Plaintiffs did sign Agreements but not with the Defendants. The Agreements were with non-party ELS, Inc. The Agreements signed by some of the Plaintiffs are attached to the Motion to Abate Litigation and Compel Arbitration (Doc. 4) as

---

[1] "Com." refers to the Complaint (Doc. 1).

Defendants' Composite Exhibit A. It is unclear from the filing as to which of the Plaintiffs did sign the Agreements in that some of the signatures are illegible. However, all of the Agreements contain the exact same language relating to arbitration.

The Agreements provides the following language:

b) Agreement to Arbitrate any and all Disputes

> Except as otherwise provided in this Agreement, ELS, Inc. and you, the Employee, agree to arbitrate all claims and controversies for which a court would otherwise be authorized to grant relief to the employee, in any way arising out of, relating to, or associated with the employment or termination of employment with ELS, Inc. This also includes all claims that ELS, Inc. may have against the Employee or that the Employee may have against ELS, Inc. This means that both parties agree to arbitrate all disputes for claims of wages or other compensation due; claims for breach of any contract or promise; expressed or implied; tort claims; sexual harassment claims; claims of discrimination, including, but not limited to, claims based on race, sex, religion, national origin, age marital status, handicap, disability or medical condition; claims for benefits, except as excluded in the following paragraph; and claims for violation of any Federal, State or other governmental constitution, statute, ordinance, regulation, or the common law.

(Doc. 4, Composite Exh. A). The Agreement also provides for certain exceptions to arbitration, but the exceptions do not apply to the facts of this case.

### III. Analysis

The Defendants are requesting that the Court refer this action to arbitration. The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Section 2 of the Act provides, in part as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. §2. Section 2 is a declaration by Congress of the liberal federal policy favoring arbitration agreements. *Senti v. Sanger Works Factory, Inc.*, 2007 WL 1174076, *4 (M.D. Fla. 2007). Section

3 of the Act requires that upon a motion by a party, the court must stay an action if an action is brought which is referable to arbitration under a written agreement. 9 U.S.C. §3.

Congress mandated a federal policy which favors arbitration agreements. *Senti*, 2007 WL 1174076 at *4 (citing *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002)). Therefore, arbitration clauses are generally construed in favor of arbitration. *Id*. (citing, *Moses H. Cone Mem. Hospital v. Mercury Const. Corp*, 460 U.S. 1, 24 (1983) and *Ruby-Collins, Inc. v. City of Huntsville, Ala.*, 748 F.2d 573, 576 (11th Cir. 1984)). The issue of whether the parties agreed to arbitrate is decided by the court and not the arbitrator, unless the agreement clearly provides otherwise. *Senti v. Sanger Works Factory, Inc.*, 2007 WL 1174076 at 4. "Generally, when deciding whether the parties agreed under the FAA to arbitrate a certain matter, courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Id*. at 5 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Therefore, the Court must look to Florida law to determine whether the parties entered into an enforceable arbitration agreement. *Id*. (citing *A.I. Trade Finance, Inc. v. Petra International Banking Corp.*, 62 F.3d 1454, 1563 (D.C. Cir. 1995)). Under both Federal and Florida law, a court must consider three factors in ruling on a motion to compel arbitration: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived. See, *Seifert v. U.S. Home Corp.*, 750 So.2d 633 (Fla. 1999) and *Florida Farm Bureau Insurance Companies v. Pulte Home Corporation*, 2005 WL 1345779, *3 (M.D. Fla. 2005) (citations omitted). As with Federal law, in Florida, all issues regarding the right to arbitrate under a contract should be resolved in favor of arbitration. *Zager Plumbing, Inc. v. JPI Nat. Const., Inc.* 785 So.2d 660, 662 (Fla. 3d DCA 2001).

In the instant case, the Plaintiffs assert that no valid arbitration agreement exists and that the issues raised in the Complaint are not subject to arbitration as it is a statutory claim. Addressing the second argument, the Plaintiffs contend that their FLSA claims are statutory and do not fall within the terms of the Agreement. The terms of the Agreement provide that the parties agreed to arbitrate all claims for "wages or other compensation due" which would include overtime wages. "The Eleventh Circuit has implicitly approved arbitration of FLSA claims." *Sammons v. Sonic-North Cadillac, Inc.*, 2007 WL 2298032, *4 (M.D. Fla. 2007) (citing *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005); *Montes v. Shearson Lehman Bros., Inc.* 128 F.3d 1456, 1458 (11th Cir. 1997); *Bolamos v. Globe Airport Sec. Servs., Inc.*, 2002 WL 1839210 (S.D. Fla. May 21, 2002), *aff'd* 64 Fed. Appx. 743 (11th Cir. 2003)). Even if the arbitration agreement does not specifically reference the FLSA, a party cannot avoid arbitration when an arbitration uses general language rather than listing every specific claim to be referred to arbitration. *Id*. (quoting *Brown v. ITT Consumer Fin. Corp.* 211 F.3d 1217, 1221 (11th Cir. 2000)). The general language to arbitrate all claims "directly or indirectly related to your . . . employment" was determined to include FLSA claims. *Bolamos v. Globe Airport Sec. Servs. Inc.*, 2002 WL 1839210, *2 (S.D.Fla. 2002). The language in the instant case includes all claims related to wages or other compensation and is broad enough to encompass claims for unpaid overtime. The Court determines that the claims of the Plaintiffs would fall within the arbitration clause in the Agreement.

The next issue is whether there is a valid agreement to arbitrate between the parties. Even though there is a strong policy favoring arbitration, arbitration is a contractual right and a party cannot be required to submit to arbitration unless he has agreed to submit the dispute to arbitration. *World Rentals and Sales, LLC v. Volvo Construction Equipment Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir.

2008). However, a lack of a written arbitration agreement does not preclude arbitration. *Smart v. Bob Wilson Dodge, Inc.*, 2006 WL 3837530, *1 (M.D. Fla. 2006). Further, in limited circumstances, nonsignatories to an agreement to arbitrate are permitted to compel arbitration. *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). The limited exceptions are: 1) equitable estoppel; 2) an agency or related principles; and 3) third-party beneficiary. *Poole v. People's Choice Home Loan, Inc.*, 2007 WL 865526, *2 (M.D. Fla. 2007) (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). In the instant case, the Defendants assert that an agency relationship exists between the Defendants and ELS, Inc. "'[U]nder agency or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided.'" *MS Dealer Serv. Corp.* 177 F.3d at 947 (quoting *Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423, 1432 (M.D. Ala. 1997)).

In the instant case, the alleged misconduct is failure to pay overtime wages. In the affidavit provided by Joseph Rivera who is the Vice President for East Coast, he states that East Coast contracted with ELS, Inc. for ELS, Inc to provide payroll and other administrative services. (Doc. 4, Exh. A, ¶5). ELS, Inc. supplied new-hire documents, including the Alternative Dispute Resolution and Mutual Agreement to Arbitrate document. (Doc. 4, Exh. A, ¶6). The Plaintiffs were employees of East Coast and not ELS, Inc. (Doc. 4, Exh. A, ¶9). ELS, Inc. issued paychecks to the Plaintiffs, but the services and labor performed by the Plaintiffs were performed for East Coast. (Doc. 4, Exh. A, ¶10). "In other words, the actual hours worked by Plaintiffs, the actual work performed by Plaintiffs, and the wages paid to Plaintiffs for that labor, were matters between East Coast Right-Of-Way Maintenance, Inc. and each Plaintiff, with administrative processing and assistance supplied by ELS,

Inc." (Doc. 4, Exh. A, ¶10).  Based upon the affidavit of Mr. Rivera, ELS, Inc. was not involved in determining whether the Plaintiffs were paid overtime for their labor.  ELS, Inc. was only providing the paychecks and related services to the Defendants.

The Defendants also provided the Client Service Agreement (Doc. 16) between East Coast and ELS, Inc.  The Client Service Agreement ("Contract") contradicts the affidavit of Mr. Rivera.  The Contract provides that ELS, Inc. would lease employees to East Coast including existing and new employees which are then loaned to East Coast. (Doc. 16, ¶4.A).  ELS, Inc. had to authority to hire, fire, and discipline the employees. (Doc. 16, ¶4A).  East Coast had the right to direct and control the leased employees. (Doc. 16, ¶4A, B).  East Coast was to furnish the information needed to ELS, Inc. to make the employment decisions. (Doc. 16, ¶4B).  ELS, Inc. was to provide written notification of its relationship with East Coast to all employees. (Doc. 16, ¶4D).  East Coast had the responsibility to report the total number of hours worked by each employee and provide that information in accordance with the FLSA to ELS, Inc. (Doc. 16, ¶9C). The Contract does not provide that ELS, Inc. act as an agent for East Coast.  Further, no agreement was provided between ELS, Inc. and Robert Smith or Michael Deluca.  The Court finds that ELS, Inc. was not acting as an agent for Robert Smith or Michael Deluca.

Further, the Court does not find that ELS, Inc. was acting as an agent for East Coast in determining the amount of wages to be paid to the Plaintiffs.  The Agreement to arbitrate is between ELS, Inc. and the Plaintiffs with no mention of ELS, Inc. acting as an agent for the Defendants nor indicating that the Defendants are third-party beneficiaries.  ELS, Inc. and East Coast have a contractual relationship but are not so close that only by permitting the nonsignatory to invoke arbitration would the evisceration of Agreement between ELS, Inc. and the Plaintiffs be avoided.  No

claims were made against ELS, Inc. in this action and the Agreement stands as to any matter between the Plaintiffs and ELS, Inc. Some of the Plaintiffs signed the Agreement with ELS, Inc. which according to Mr. Rivera has not participated in any alleged misconduct in this mater. East Coast has not shown that ELS, Inc. was acting as its agent for the purposes of the Agreement. Robert Smith and Michael Deluca have not shown that ELS, Inc. was acting as their agent. Therefore, the Court determines that the Alternative Dispute Resolution and Mutual Agreement to Arbitrate does not compel the Plaintiffs to participate in an arbitration. Based upon this finding, the Court need not determine which of the Plaintiffs entered into the Alternative Dispute Resolution and Mutual Agreement to Arbitrate nor whether the financial status of the Plaintiffs precludes arbitration.

**IT IS RESPECTFULLY RECOMMENDED:**

That the Motion to Abate Litigation and Compel Arbitration (Doc. 4) be denied, and this case proceed in the District Court.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this   7th   day of October, 2008.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record